IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CAROL A. SULLIVAN and : | |
| BRUCE SULLIVAN, *individually and* : | |
| *as co-administrators of the estate of* : | |
| *Sean Sullivan*, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 07-4447 |
| WARMINSTER TOWNSHIP, ET AL. : | |

SURRICK, J.                                                                      MARCH  4 , 2011

<u>MEMORANDUM</u>

Presently before the Court is Plaintiffs' Motion to Compel.  (ECF No. 44.)  For the following reasons, Plaintiffs' Motion will be denied.

I.      BACKGROUND

Carol and Bruce Sullivan filed this action against Warminster Township, Warrington Township, and a number of police officers from both townships, alleging various causes of action arising out of the shooting death of their son, Sean Sullivan, by Warminster Township police officers.[1]  The facts underlying Plaintiffs' complaint are set forth in greater detail in *Sullivan v. Warminster Township*, No. 07-4447, 2010 WL 2164520, at *1-2 (E.D. Pa. May 27, 2010).

Six days after Sean Sullivan was shot and killed, the insurance company for the Warminster Defendants, Delaware Valley Insurance Trust ("DVIT"), opened a claim file.  DVIT

---

[1] On February 25, 2011, a Stipulation dismissing all claims against Warrington Township and James J. Miller was approved by the Court.  (ECF No. 77.)  We refer to Warminster Township and the defendant police officers within its employ as the "Warminster Defendants."

contacted the law firm of Marshall, Dennehey, Warner, Coleman & Goggin ("MDW"), and agreed to retain the firm "to represent Warminster Township and its officers at this time for any potential claim(s) that may be filed in the future." (Engagement Letter 1, *in camera* filing.) DVIT asked Joseph Santarone of MDW to reach out to Warminster Township Police Chief Michael Murphy "to advise of DVIT's official appointment of [MDW's] legal representation to the township and to formalize this to the Chief and T[ownship] Manager in writing." (*Id.*) DVIT further informed Santarone that "[i]f the Chief needs any legal assist[ance] for the investigation, we ask that you and your team provide anything necessary. . . . If any legal letter of rep[resentation] arrives, please advise the Chief etc. to advise you and DVIT immediately." (*Id.*) MDW replied to DVIT by letter to "acknowledge receipt of the above-captioned assignment . . . ." (*Id.* at 3.) The email from DVIT to Santarone bears the subject heading "Sullivan v. Warminster."

    The internal investigation was performed by Christopher Boyle, an attorney with the MDW law firm and a former police officer. At the close of the investigation, the Warminster Defendants publicly announced that the investigation had revealed no improprieties in either their behavior or their policies. (Pls.' Mot. Ex. B at 16, ECF No. 44-4.) Warminster Police Chief Michael Murphy was quoted by the Bucks County Courier Times as stating that, "[w]e've gotten a clean bill of health on everything." (*Id.*) Although the article did not reveal that Boyle had performed the investigation, it did state that he had not been paid by the Township for his work. The article further revealed that "the former lieutenant made his decision based on reports of the shooting given to him by township police, physical evidence, a computer-generated re-enactment and interviews with the involved officers," but Boyle "would not release any of that

2

information to the press or the public." (*Id.*)

Plaintiff learned of the existence of Boyle's report in March of 2008 when Defendants responded to a discovery request. Defendants' response advised that the report was privileged. After the deposition of Chief Murphy in October of 2010 Plaintiffs filed the instant Motion to Compel seeking discovery of the report. Defendants oppose discovery of the report, asserting attorney-client and work-product privilege. We have examined the disputed documents *in camera*, and the matter is now ripe for disposition.

## II. LEGAL STANDARD

District courts have broad discretion to manage discovery. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 734 (3d Cir. 1995). When a federal-court action contains both federal- and state-law claims, the court applies federal privilege law. *Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000). The Third Circuit has defined the attorney-client privilege as follows:

> [t]he traditional elements of the attorney client privilege that identify communications that may be protected from disclosure in discovery are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his or her subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (citations omitted). The party claiming that evidence is subject to the attorney-client privilege bears the burden of establishing the privilege. *United States v. Voigt*, 89 F.3d 1050, 1067 n.6 (3d Cir. 1996). Furthermore, "under traditional waiver doctrine a voluntary disclosure to a third party

3

waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991).

The work-product privilege is codified by Federal Rule of Civil Procedure 26(b)(3), which states that:

> a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3). As with the attorney-client privilege, the party claiming that evidence is protected attorney work product has the burden of establishing that work-product protection applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). Unlike the attorney-client privilege, disclosure to a third party only waives the work-product privilege if it permits an adversary to gain access to the information. *See Westinghouse Elec. Corp.*, 951 F.2d at 1428 ("Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information.").

## III. ANALYSIS

Plaintiffs contend that Boyle's report is not protected by the attorney-client or work-product privileges, or that if it is, the privileges have been waived. (Pls.' Mot. 16-30, ECF No. 44.) We examine each of these arguments in turn.

### A. Attorney-Client Privilege

Plaintiffs argue that the attorney-client privilege does not apply because the first element, which requires that the asserted holder be or seek to be a client, is not satisfied. Plaintiffs point out that Chief Murphy repeatedly testified in his deposition that he did not believe that Boyle was acting as the Township's attorney in conducting the investigation. (Pls.' Mot. 18; *see also* Murphy Dep. 87:21-88:11, Pls.' Mot. Ex. B.) However, Chief Murphy also testified that he was not in a position to know whether Boyle was acting as the Township's attorney or not. (Murphy Dep. 88:4-6.) Moreover, the engagement letter between DVIT and MDW explicitly contemplates that MDW's attorneys (of which Boyle is one) were being retained to provide legal advice and representation to the Township in the Sullivan matter. (*See* Engagement Letter 1 (subject heading of April 5, 2006, email from DVIT to MDW is "Sullivan v. Warminster").) Plaintiffs cite no authority and we are aware of none that stands for the proposition that when an attorney represents an organization, the subjective belief of one of the organization's leaders that the attorney is not acting as the organization's attorney is sufficient to prevent the privilege from attaching. Even setting aside Chief Murphy's comment that he was not in a position to know whether Boyle was acting as the Township's attorney, we conclude that the subjective belief of Chief Murphy, without more, is not sufficient to prevent the attorney-client privilege from attaching.

Plaintiffs further contend that Boyle did not act in his capacity as an attorney when he performed the independent investigation; thus, the privilege does not attach. (Pls.' Mot. 18-20.) Plaintiffs argue that Boyle was acting in his capacity as a retired police officer rather than as an attorney. (*Id.*) Plaintiffs then reiterate that Chief Murphy did not believe that Boyle was acting

5

in his capacity as an attorney. (*Id.*)  However, the documents that the Warminster Defendants provided for *in camera* review reveal that Boyle was acting as an attorney when he reviewed the circumstances of the shooting.  Among other things, the document discusses legal strategy regarding the shooting.  *See In re Application of Chevron Corp.*, No. 10-208, 2010 WL 5173279, at *7 (E.D. Pa. Dec. 20, 2010) (rejecting argument that attorneys were not acting in their capacity as lawyers and reasoning that "much of the evidence provided by applicants also reveals [the attorneys'] participation in developing legal and settlement strategy").  Plaintiffs also note that Chief Murphy did not expect that his communications with Boyle would be kept confidential.  (Pls.' Mot. 20.)  However, this is not a requirement for the attorney-client privilege to attach under the Third Circuit's formulation of the standard in *Rhone-Poulenc Rorer*, 32 F.3d at 862, and Plaintiffs cite no authority to support the proposition that every member of an organizational client must have an expectation of confidentiality for the privilege to attach.

Plaintiffs also argue that documents and facts gathered from outside sources rather than the client are not protected by the attorney-client privilege.  (*Id.* at 21-22.)  This simply reflects the truism that it is the communications and not the underlying facts that are privileged.  *See, e.g.*, *Rhone-Poulenc Rorer*, 32 F.3d at 862.  Plaintiffs are entitled to discovery regarding the underlying facts of the investigation.  It should be further noted, however, that:

> The protective cloak of [attorney-client] privilege does not extend to information which an attorney secures from a witness while acting for his client in anticipation of litigation. Nor does this privilege concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories.

6

*Sampson v. School Dist. of Lancaster*, 262 F.R.D. 469, 474 (E.D. Pa. 2008). Such communications are generally protected by the work-product privilege instead. *See id.*

Boyle's report discusses legal strategy regarding the Sullivan shooting. It is clear from the documents and the engagement letter that Boyle was retained to represent the Warminster Defendants in any litigation that might arise from the Sullivan shooting. Chief Murphy's subjective beliefs are not by themselves sufficient to prevent the privilege from attaching. We conclude that the report Boyle produced in the aftermath of the shooting is protected by the attorney-client privilege.

### B. Work-Product Privilege

Under Federal Rule of Civil Procedure 26(b)(3), Plaintiffs "may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Plaintiffs argue that Boyle's report does not qualify for protection as attorney work product because it was not prepared in anticipation of litigation. (Pls.' Mot. 22-24.)

"The question whether a document was prepared in anticipation of litigation is often a difficult factual matter." *United States v. Rockwell Int'l*, 897 F.2d 1255, 1266 (3d Cir. 1990). The Third Circuit has stated that a document is created in anticipation of litigation when, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (citations omitted). In applying this test, courts must look to "the state of mind of the party preparing the document or . . . the party ordering preparation of the document." *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993). This inquiry is limited by the

requirement that the party's anticipation of litigation be objectively reasonable. *Id.* Furthermore, documents prepared in the regular course of business rather than for purposes of the litigation are not eligible for work-product protection, even if the prospect of litigation exists. 8 Charles Alan Wright et al., Federal Practice & Procedure § 2024 (3d ed. 2010).

Plaintiffs argue that Boyle's report was produced in the ordinary course of business and not in anticipation of litigation. (Pls.' Mot. 24-25 (citing cases).) There is no evidence in the record to show that an investigation by a licensed attorney is the kind of routine investigation that would preclude Boyle's investigation from receiving work-product protection, however, or that Warminster Township routinely retained counsel to conduct similar investigations following incidents with the police department. In contrast, the engagement letter clearly anticipates that litigation would likely result from the shooting. It states that it is an "agreement to retain you/your firm to represent Warminster Township and its officers at this time for any potential claim(s) that may be filed in the future." (Engagement Letter 1.) It further states that although the shooting appeared justified, "that won't keep [plaintiffs' attorneys] away." (*Id.*) The subject line of the email is "Sullivan v. Warminster." (*Id.*) The engagement letter makes it clear that DVIT retained MDW for the purpose of representing the Warminster Defendants in any litigation that might result from the shooting. We reject Plaintiffs' argument that Boyle's investigation was produced in the ordinary course of business rather than in anticipation of litigation.

Plaintiffs argue that they have a substantial need for the materials and cannot obtain them without undue hardship. Work-product protection is not absolute, and Plaintiffs can obtain otherwise protected materials if they show that they have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by

8

other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs contend that Boyle's witness interviews were conducted shortly after the shooting, while Plaintiffs' depositions of the witnesses were conducted years later. (*See* Pls.' Mot. 25-26 (citing *Basinger v. Glacier Carriers*, 107 F.R.D. 771, 774 (M.D. Pa. 1985) ("Witness statements are considered unique when witnesses have given a nearly contemporaneous account of the incident while memories are fresh. When the same witnesses are available to the discovering parties only a substantial time thereafter, the likelihood that the discovering party cannot obtain substantially equivalent information is real.")).) Plaintiffs contend that the delay between when the shooting took place and when depositions were held establishes a substantial need for the documents. We disagree. "[A]ssertions of possibly faded memories—as distinct from a witness's statement during the course of a deposition that she does not remember relevant facts—cannot suffice to overcome the work product privilege." *United States v. Urban Health Network, Inc.*, No. 91-5976, 1993 WL 12811, at *3 (E.D. Pa. Jan. 19, 1993) (citations omitted). Moreover, even if the fact that Boyle's witness interviews were conducted shortly after the shooting were sufficient to justify abrogating work-product protection, Plaintiffs waited 19 months before filing the instant action. Most of the delay between the shooting and depositions is Plaintiffs' own fault. Under these circumstances, we will not find a "substantial need" for the documents Plaintiffs seek.

    **C.    Waiver**

Both the attorney-client and work-product privileges can be waived by disclosure to third parties. While disclosure to a third party waives the attorney-client privilege as to the world, disclosure only waives the work-product privilege if it permits an adversary to gain access to the information. *See Westinghouse Elec. Corp.*, 951 F.2d at 1428. Plaintiffs argue that by disclosing

9

to the media that Boyle had concluded after his investigation that the officers who shot and killed Sean Sullivan were justified in doing so, the Warminster Defendants have waived the privilege. (Pls.' Mot. 27-30.)

With regard to the question of whether Chief Murphy could waive the attorney-client and the work-product privilege in the first place, neither Plaintiffs nor the Warminster Defendants have addressed the issue of who in a municipal corporation can waive these privileges. Interestingly, many courts gloss over the issue as well. *See* 24 Charles Alan Wright et al. § 5487 (expressing surprise at how infrequently the issue of who in a corporation can waive the privilege has been addressed in the case law). Thus, there is a dearth of case law analyzing which employees in a municipal corporation can waive the attorney-client privilege. The Supreme Court has observed in dictum that "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) (noting parties' agreement to this principle but appearing to offer no opinion on behalf of the Court). However, *Weintraub* did not expressly limit the ability to waive the attorney-client or work-product privilege to officers and directors. *See Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 413 (S.D.N.Y. 2004) (noting that *Weintraub* held that a bankruptcy trustee has authority to waive attorney-client privilege on behalf of corporate debtor).

In the instant case we need not address exactly who in a municipal corporation can waive the attorney-client and work-product privileges on behalf of a municipality. We are satisfied that as the head of the Warminster Police Department, Chief Murphy's position is sufficiently

managerial to justify the conclusion that he has authority to waive these privileges on behalf of the municipality.

In support of their contention that the Warminster Defendants have waived the attorney-client and work-product privileges, Plaintiffs attach an article from the Bucks County Courier Times entitled, "2nd Opinion: Fatal Shooting Justified." (*See* Pls.' Mot. Ex. B at 16.) The article discloses that this opinion was rendered by "a practicing attorney and retired police lieutenant whom Warminster Police Chief Michael Murphy would not identify." (*Id.*) Chief Murphy informed the press that Boyle's decision was "based on reports of the shooting given to him by township police, physical evidence, a computer-generated re-enactment and interviews with the involved officers." (*Id.*) Chief Murphy did not give the press access to these materials.

The disclosure to the media by Chief Murphy constitutes a partial disclosure of information that would otherwise be protected by the work-product and attorney-client privileges.[2] Such disclosures waive the privileges as to the information that is actually disclosed. *Westinghouse Elec. Corp.*, 951 F.2d at 1426 n.12. Thus, the privileges have been waived as to Boyle's communication to Warrington Township and Chief Murphy that the shooting of Sean Sullivan was justified. Under *Westinghouse*, however, "[w]hen a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's

---

[2] Partial disclosure should not be confused with selective disclosure. Partial disclosure occurs when a litigant discloses a portion of a privileged communication while invoking a privilege as to the remainder of the communication. Selective disclosure occurs when a party discloses information to one party (often the government) but invokes a privilege to prevent disclosure of the same information to other parties. *See Westinghouse Elec. Corp.*, 951 F.2d at 1423 n.7.

11

adversary." *Id.* (citing *In re Von Bulow*, 828 F.2d 94 (2d Cir. 1987)); *see also In re Teleglobe Comm. Corp.*, 493 F.3d 345, 378 (3d Cir. 2007) ("[A] party is only forced to produce documents under a prospective waiver theory if it agrees to disclose only favorable privileged documents while keeping for itself the unfavorable ones to gain an advantage in litigation." (citing *Westinghouse Elec. Corp.*, 951 F.2d at 1426 n.12)).

A review of the case law reveals a distinction between partial waivers that occur within the context of judicial proceedings, and extrajudicial partial waivers. Courts are far more likely to find an implied waiver of the privilege where a party waives the privilege in order to introduce a small portion of a body of information in a judicial proceeding while maintaining the privilege for the rest of the information. *See, e.g.*, *In re Von Bulow*, 828 F.2d at 103 (collecting cases). Courts generally hold that disclosures that occur outside the context of a judicial proceeding do not implicitly waive the privilege as to all communications on the same subject matter. *See, e.g.*, *id.* ("[W]here, as here, disclosures of privileged information are made extrajudicially and without prejudice to the opposing party, there exists no reason in logic or equity to broaden the waiver beyond those matters actually revealed."); *In re Keeper of Records*, 348 F.3d 16, 24 (1st Cir. 2003) ("[T]he extrajudicial disclosure of attorney-client communications, not thereafter used by the client to gain adversarial advantage in judicial proceedings, cannot work an implied waiver of all confidential communications on the same subject matter.").

We conclude that Chief Murphy's disclosure, which was made before Plaintiffs filed the instant lawsuit, does not effect an implied waiver of the attorney-client and work-product privileges for the remainder of Boyle's report. We do not perceive any prejudice or unfairness to Plaintiffs resulting from Chief Murphy's extrajudicial disclosure. Plaintiffs are entitled to cross-

examine witnesses at trial as to the underlying facts of the action, and Plaintiffs have taken numerous depositions of these witnesses as well. An implied waiver of the privilege for Boyle's report is therefore inappropriate.

V. **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel is denied.

An appropriate Order follows.

                                          **BY THE COURT:**

                                          **R. BARCLAY SURRICK, J.**